UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SHIRLEY TROTTER as Special Administrator of the Estate of Carlos Trotter, <br><br> Plaintiff, <br><br> v. <br><br> BRANDON LOGAN, <br> CITY OF LAWRENCE, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 1:23-cv-01065-RLY-TAB <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL**

**I.  Introduction**

This case centers on an officer-involved shooting by Defendant Brendan Logan of the Lawrence Police Department that resulted in the death of Carlos Trotter.  Plaintiff Shirley Trotter, the administrator of the decedent's estate, alleges excessive force and related claims against Defendants Logan and the City of Lawrence.  Pending before the Court is Trotter's motion to compel discovery.  [Filing No. 39.]  Trotter requests that the City provide full and complete discovery related to Logan's substance use.  The City has refused to produce the requested documents, arguing that the information sought is irrelevant and subject to the deliberative process and law enforcement investigatory privileges.  The Court finds Trotter's motion well taken.  Defendants cannot withhold all the documents in question.  Accordingly, for reasons explained below, Trotter's motion to compel is granted.  [Filing No. 39.]

**II.      Background**

Trotter's underlying complaint accuses Logan of excessive force, assault, and battery, and asserts vicarious liability against the City in relation to the October 27, 2022, fatal shooting. [Filing No. 1.] Trotter's counsel learned that Logan was subsequently arrested in Marion County on January 24, 2023, for operating a vehicle while intoxicated. The probable cause affidavit in that matter reveals that Logan indicated to the arresting officer that he had a disciplinary history stemming from coming to work intoxicated. [Filing No. 40, at ECF p. 1-2.] In response, Trotter's counsel sought discovery of all internal affairs files and records, or any separate files maintained for Logan, as well as all electronic messages regarding Logan sent or received by former chiefs of police since May 2021 (by former LPD Chief David Hoffman) and since February 1, 2022 (by former LPD Chiefs Gary Woodruff and Curtis Bigbee). [Filing No. 42, at ECF p. 3.] The City has acknowledged it possesses documents responsive to the request, but it has declined to produce them based on relevance as well as the deliberative process and law enforcement investigatory privileges. [Filing No. 42, at ECF p. 2-3.] The City provided Trotter with a privilege log and highly redacted copies of some documents, including two psychological evaluations of Logan.

On April 26, 2024, the parties appeared for a telephonic status conference to address this discovery dispute. [Filing No. 37.] The Court ordered briefing of the issues and instructed Defendants to file sealed, unredacted copies of the two psychological evaluations of Logan from August 29, 2022, and November 15, 2022, for court eyes only for *in camera* review. [Filing No. 37, at ECF p. 1.] Thereafter, Trotter filed the pending motion to compel. [Filing No. 39.][1]

---

[1] In addition, on May 17, 2024, after learning additional information about Logan's on-duty intoxication and disciplinary history through depositions, Trotter filed her first motion to amend the complaint, which has not been ruled on yet. [Filing No. 45.]

### III. Discussion

Trotter requests that the Court enter an order compelling the City to produce complete discovery responses related to Logan's work-related alcohol use. [Filing No. 39; Filing No. 40.] The City argues that the files at issue do not pertain to the events on October 27, 2022, and do not make any issue of alleged use of excessive force more or less likely. In addition, the City claims that there are important public policy interests in maintaining certain communications as protected under the deliberative process privilege or the law enforcement investigatory privilege, including to encourage police officers to be candid during internal investigations and to allow police departments to have open and frank discussions about officer mental health, treatment, and discipline. [Filing No. 42, at ECF p. 3.]

Courts have broad discretion over discovery. *See* Fed. R. Civ. P. 26(b)(1) (A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.") A party may seek an order to compel discovery when an opposing party fails to respond to discovery requests or has provided evasive or incomplete responses. Fed. R. Civ. P. 37(a)(3)-(4). The party withholding responsive documents from discovery bears the burden of establishing that the withheld materials are not discoverable. *See, e.g.,* Fed. R. Civ. P. 26(b)(5)(A); *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, No. 1:13-cv-1316-JMS-TAB, 2014 WL 7360049, at *1 (S.D. Ind. Dec. 23, 3014). The parties generally agree on the applicable law but disagree on its application.

A.      Relevance

As a threshold matter, the City argues that the documents at issue are irrelevant to the claims in this action because they do not make any issue more or less likely or lead to the discovery of admissible evidence. [Filing No. 42, at ECF p. 6.] The City further claims Logan's internal affairs file is irrelevant to the excessive force claims asserted. [Filing No. 42, at ECF p. 12.]

The federal discovery rules are broadly construed to afford parties the free exchange of information, regardless of admissibility. *See, e.g., Estate of Daniels v. City of Indianapolis*, 1:20-cv-02280-JRS-MJD, 2021 WL 4844145 at *2-3 (S.D. Ind. Oct. 18, 2011) (citing Fed. R. Civ. P. 26(b)(1)). Trotter reasonably argues that the documents at issue could assist with assessing Logan's fitness to exercise judgment under stress and whether Logan acted in a criminally reckless manner on the day of the fatal shooting. [Filing No. 46, at ECF p. 5.] Moreover, Trotter has since moved to amend her complaint to add negligent hiring and negligent retention; negligent supervision; negligent entrustment; and a *Monell* claim. [Filing No. 45.] The City did not test Logan for alcohol and drugs following the October 27, 2022, shooting, despite his known history and the fact that he had just returned to full duty status less than two months before the incident occurred. Thus, this additional discovery could aid in developing existing and potential claims.

The City further argues that it has produced other information that bears on Logan's sobriety temporally closer to the October 27 incident and that the affirmative evidence that has been provided to Trotter "definitively establishes Logan's sobriety on that date." [Filing No. 42, at ECF p. 11.] The Court disagrees. The City relies largely on the declaration of Chaplain Mel Keaton, who, as a sworn law enforcement officer trained in recognizing signs of intoxication,

4

observed no signs of on-duty intoxication from Logan in the hours immediately following the October 27 shooting. Keaton's declaration essentially asserts that he was able to determine through observation alone that Logan was sober. However, nothing in Keaton's affidavit references any testing conducted on Logan, nor any special training Keaton received to detect the presence of substances within a person's blood by simple proximity.

Trotter counters by citing to *Bisard v. State*, 26 N.E.3d 1060, 1063 (Ind. Ct. App. 2015), *transfer denied*, 32 N.E. 238 (Ind. 2015). It is not *Bisard's* holding Trotter references, but rather the factually similar background. In *Bisard*, an on-duty K-9 officer crashed into motorcycles, resulting in one death and two severe injuries. *Id.* The Indiana Court of Appeals noted that those who interacted with Bisard at the scene testified that he "did not exhibit any signs of intoxication, such as bloodshot eyes, unsteady balance, or slurred speech. Several others testified that there was no indication that Bisard was intoxicated." *Id.* at 1064. Yet his blood alcohol content was 0.19%, or more than twice the legal limit to operate a vehicle. *Id.* The *Bisard* case was a tragic example of how human observation, standing alone, may provide limited accuracy as to an individual's level of intoxication.

Trotter's reply brief sets forth Logan's detailed history of criminal charges and misbehavior relating to his abuse of alcohol, both before and after the October 27 shooting. [Filing No. 46, at ECF p. 3.] This history—combined with the fact that Logan was not tested for any controlled substances following the fatal shooting—is not evidence that Logan consumed alcohol on October 27, 2022. However, it provides context and reasonableness for Trotter's discovery requests. Thus, the City's relevance and admissibility concerns do not shield any of the requested documents from discovery.

5

## B. Deliberative Process Privilege

The City argues that some of the communications at issue are protected by the deliberative-process privilege. "The deliberative-process privilege protects pre-decisional communications among agency subordinates and decision-makers in order to encourage candid, frank, uninhibited exchanges of opinions and recommendations for the purpose of facilitating the development of governmental policies and decisions and avoiding confusing and misleading the public." *Valbruna Slater Steel Corp. v. Joslyn Mfg. Co*., No. 1:15-mc-39-SEB-DKL, 2015 WL 6695510, at *4 (S.D. Ind. Nov. 3, 2015) (internal citations omitted). The privilege "should be applied as narrowly as consistent with efficient government operation." *Id*. (internal citation and quotation marks omitted). *See also Rodriguez v. City of Chicago*, 329 F.R.D. 182, 186 (N.D. Ill. 2019) ("The federal common law deliberative process privilege protects communications that are part of a government agency's decision-making process so long as those communications are both pre-decisional and deliberative." (Internal citation and quotation marks omitted)).

Trotter's brief initially focuses on the debate about whether Indiana even recognizes the deliberative process privilege, and further notes that there is some disagreement on whether the privilege applies to municipal government, or only federal government actors. *See, e.g., Estate of Whitfield v. City of Indianapolis*, No. 1:22-cv-01246-SEB-MJD, 2023 WL 7128593, at *5 (S.D. Ind. Oct. 30, 2023) ("[T]here is no clear consensus regarding whether the deliberative process privilege even applies to the circumstances of this case."). *See also Santiago v. City of Chicago*, No: 1:19-cv-04652, 2023 WL 5096288 (N.D. Ill. Aug. 9, 2023) ("While the Seventh Circuit has not addressed whether the deliberative process privilege applies to state and municipal government actors, it also has not rejected such an application. . . . Moreover, this Court is persuaded by the decisions of the many district courts within this circuit as well as in

6

other jurisdictions that have applied the deliberative process privilege to state and municipal actors. The Court views these many decisions, which are consistent with the principles supporting the deliberative process privilege articulated by the Seventh Circuit, as demonstrating the existence of a deliberative process privilege for state and municipal officials under federal common law."). *Cf. Murdock v. City of Chicago*, 565 F. Supp. 3d 1037, 1043 (N.D. Ill. 2021) (declining to recognize any deliberative process privilege for state and municipal officials in Illinois); *Jones v. City of Indianapolis*, 216 F.R.D. 440, 450 (S.D. Ind. 2003) (stating that "no court in the district has expressly held that the deliberative process privilege applies to municipal governmental entity[.]").

*Whitfield* involved a similar factual scenario as this case, arising out of the death of Herman Whitfield III when six police officers were taking him into custody. *Estate of Whitfield*, No. 1:22-cv-01246-SEB-MJD, 2023 WL 7128593, at *1 (S.D. Ind. Oct. 30, 2023). The City of Indianapolis asserted the law enforcement investigatory privilege, the deliberative process privilege, and the Fifth Amendment as to each of the withheld documents in *Whitfield*. *Id.* at *3. The defendants did not set forth any reason for withholding the documents related to the ability of the IMPD to deliberate and make decisions, so the Court found that the City did not satisfy its initial burden with regard to the deliberative process privilege. *Id.* at *7. Thus, without deciding on the issue of whether the privilege applies to state or municipal actors, *Whitfield* concluded that none of the documents at issue could be withheld based on the deliberative process privilege. *Id.*

Even more significant to the factual context of this case, *Whitfield* cites to a string of cases from various district courts holding that the deliberative process privilege is inapplicable to a § 1983 defendant's personnel files, internal affairs files, complaints, and disciplinary reports. *See id.* at *5 ("The second potential issue is whether the privilege applies to the type of internal

7

affairs/disciplinary decisions at issue in this case. 'Courts have held that the deliberative-process privilege generally does not apply in civil-rights lawsuits to protect from disclosure internal-affairs documents, investigations, and records of witness/police officer statements, as these routinely generated communications are not designed to contribute to the formulation of important public policy.' " (Quoting *Shifflett by & through Davenport v. City of San Leandro*, 2023 WL 4551077, at *5 (N.D. Cal. July 13, 2023)).

In *Whitfield*, the Court found the City failed to satisfy its initial burden with regard to the deliberative process privilege because a declaration it submitted in support of its assertion "does not specifically identify and describe the documents in question; rather it speaks only of any IA materials generally." (Internal quotation marks omitted). Here, the City relies on the declaration of former police Chief Gary Woodruff, which broadly refers to several communications between Woodruff and others in leadership roles with the Lawrence Police Department. [Filing No. 42-2.] However, neither Woodruff's declaration nor the City's arguments discuss how any factual statements—including the factual basis for Logan's disciplinary issues—are covered as "deliberation." Rather, the privilege is intended to apply only in limited situations where the documents at issue contribute to the formulation of important public policy or new law. *See, e.g., Whitfield*, at *5. *See also Gudkovich v. City of Chicago*, No. 1:17-cv-8714, 2022 WL 252716, at *9 (N.D. Ill. Jan. 27, 2022) ("This Court finds persuasive the authority which holds that the deliberative process privilege was created to protect deliberations of a political nature, rather than the application of straightforward and established criteria to routine matters.").

Woodruff's affidavit simply refers to the privilege log, which identifies the documents as confidential. [Filing No. 42-2.] The Court did not specifically request—and the City did not provide—the documents identified as protected by the deliberative process privilege for *in*

8

*camera* review. Thus, the Court cannot say with certainty what they contain. However, any purely factual information in those documents is not protected by this privilege, nor are deliberations related solely to personnel decisions, rather than policymaking. Moreover, on October 20, 2023, the Court approved a protective order, which remains in place in this matter. [Filing No. 20.] This protective order limits the use of the documents to this case and can address any concerns regarding maintaining confidentiality of the documents. Therefore, the City's assertions of the deliberative process privilege are overruled insofar as the documents identified on the privilege log as being protected by this privilege contain factual, non-deliberative information. The City is directed to provide those documents to Trotter, subject to the protective order. If, after review of the materials, Trotter thinks the City has redacted or failed to provide documents that should have been provided, Trotter can request a telephonic status conference with the magistrate judge, and the Court will consider whether *in camera* review of additional documents is warranted.

   **C.**  **Law Enforcement Investigatory Privilege**

   Trotter also seeks Logan's internal affairs investigation file No. 2021-05-27, which the City maintains is protected by the law enforcement investigatory privilege. [Filing No. 40, at ECF p. 10.] "The law enforcement investigatory privilege is a qualified common law privilege protecting civil as well as criminal law enforcement investigatory files from civil discovery." *Jones*, 216 F.R.D. at 443-44 (citation and internal quotation marks omitted). In analyzing whether the privilege applies, the Court considers ten factors announced in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D. Pa. 1973), including:

   (1) the extent to which disclosure will thwart governmental processes by discouraging citizens form giving government information;

(2) the impact upon persons who have given information of having their identities disclosed;

(3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;

(4) whether the information sought is factual data or evaluative summary;

(5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question;

(6) whether the investigation has been completed;

(7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation;

(8) whether the plaintiff's suit is nonfrivolous and brought in good faith;

(9) whether the information sought is available through other discovery or from other sources; and

(10) the importance of the information sought to the plaintiff's case.

The Court has considerable leeway in weighing these factors and determining whether the privilege should apply. *See, e.g., Taylor v. Gilbert*, No. 2:15-cv-348-JMS-MJD, 2018 WL 1334935, at *3 (S.D. Ind. Mar. 15, 2018).

The City has not yet produced the internal affairs file in its entirety, so Trotter can only speculate (based on the assumption that the file number is a date), that this file contains the City's internal affairs documentation pertaining to Logan's appearance at work while intoxicated that Logan referenced during a subsequent arrest. The Court instructed Defendants to file sealed, unredacted copies of Logan's confidential psychological evaluations from August 29, 2022, and November 15, 2022, which were previously provided in redacted form, for an *in camera* review. [Filing No. 37, at ECF p. 1.] Confusingly, neither of these reports are specifically identified on the privilege log. Moreover, Trotter's reply brief claims that Trotter recently learned, through

depositions, that there are actually five total psychological reports, not just the two provided. [Filing No. 46, at ECF p. 8.]

Despite the uncertainty regarding the specific contents of the IA file, the *Frankenhauser* factors that can be evaluated weigh in favor of finding the privilege does not apply to shield the file from disclosure.[2] The City admits that factors 1, 5, 6, and 8 at least nominally weigh in favor of disclosure. For instance, the investigation in this case did not involve civilian witnesses (factor 1). Moreover, whether disclosure would thwart governmental processes by discouraging citizens from giving government information (factor 1) or would impact persons giving information having their identities disclosed (factor 2), can be mitigated by the discovery protective order that is already in place. This order already encompasses any materials the City may produce from internal affairs and disciplinary files and negates the fear that disclosure would publicly reveal personal information. *See, e.g., Davis v. Carmel Clay Schs.*, 282 F.R.D. 201, 211 (S.D. Ind. 2012) ("In order to protect the identity of the minor witnesses, the parties shall move the Court for entry of a protective order with the Prosecutor and the City within seven days of the date of this Order."), *on reconsideration in part*, 286 F.R.D. 411 (S.D. Ind. 2012).

In addition, Trotter is not a potential defendant in a pending or likely forthcoming criminal proceeding (factor 5), the investigation concluded in mid-2021 (factor 6), and the City has not taken the position that this suit is frivolous or brought in bad faith (factor 8). No charges have been filed against Logan in connection to the fatal shooting that occurred in October 2022, nor has any information been provided that would indicate he is subject to any charges related to

---

[2] The City makes no arguments related to factor 4, and the Court cannot definitively weigh this factor (whether the information sought is factual data or evaluative summary) without knowing the contents of the file.

the shooting. Although disciplinary proceedings against Logan arose from the investigation, those proceedings concluded in fall 2021. Thus, factor 7 also weighs in favor of disclosure.

Factor 3, the degree to which governmental self-evaluations and consequent program improvement will be chilled by disclosure, could potentially weigh in favor of non-disclosure, as it appears the IA file contains handwritten notes from the internal affairs investigation and other quintessential governmental self-evaluation components. However, Trotter stresses that "[e]ven if there were some degree of suppression of self-evaluations and program improvements, the public interest in disclosure of this important public policy far outweighs any perceived harm." [Filing No. 40, at ECF p. 14.] The Court agrees. Thus, factor 3 does not heavily weigh against disclosure.

Finally, the City unsuccessfully claims that factors 9 and 10 are overriding for non-disclosure. In support, the City contends that Trotter has made clear she is seeking information related to Logan's sobriety, but argues that it remains irrelevant to the key inquiry of the objective reasonableness of force Logan used on October 27, 2022. [Filing No. 42, at ECF p. 14.] In addition, the City claims it has produced other information that bears on Logan's sobriety temporally closer to the incident. However, as explained above, those documents and statements (the declaration of Chaplain Keaton, and redacted psychological evaluations) are not sufficient and do not override Trotter's arguments as to why she needs this particular discovery.

Factor 9 refers to whether the information sought is available through other discovery or from other sources. Contrary to the City's arguments, this factor clearly weighs in favor of disclosure, as only the City has access to the internal records and IA file contents. Thus, the City alone holds all the information related to Logan's disciplinary history and any actions the City took to curtail his misconduct. Factor 10 relates to the importance of the information sought to

the plaintiff's case. As explained above, Trotter has set forth a reasonable argument for why this information is relevant at this point in the case. Whether it is ultimately admissible is a question for a later day. As noted above, the protective order in place can address any remaining confidentiality concerns. Thus, the *Frankenhauser* factors support the conclusion that the IA file is not protected by the law enforcement investigatory privilege. The City must produce the IA file in its entirety—including all five of Logan's psychological evaluations referenced in the briefing.

**IV.    Conclusion**

Trotter's motion to compel is granted. [Filing No. 39.] The City is directed to produce all responsive documents, subject to the protective order in place. This includes the entirety of the IA file (including all five of Logan's psychological evaluations), as well as additional documents identified on Defendants' privilege log as protected by the deliberative process privilege that contain factual or non-deliberative information related to personnel decisions. To the extent the City determines in good faith that these materials also include policymaking information, such information may be redacted and produced to Plaintiff with an updated privilege log.[3] As noted above, if, after review of the materials produced, Trotter still believes the City has redacted or failed to provide documents that should have been provided, Trotter can request a telephonic

---

[3] Similarly, to the extent withheld documents contain information the City identified as protected by attorney/client or work product privileges, Plaintiff's motion and briefs do not challenge these designations, so redaction of that information would be appropriate as well.

status conference, and the Court will consider whether *in camera* review of additional documents is warranted.[4]

Date: 6/13/2024

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana


Distribution:

All ECF-registered counsel of record via email

---

[4] Trotter further requests that the Court schedule a hearing for the purpose of ordering the City to pay Trotter's reasonable expenses, including attorney's fees. The Court denies this request given that the issues before the Court encompass a good faith discovery dispute. The Court cannot conclude that Defendants' position was not substantially justified.